UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 02/21/2017

MARLOS CHENAULT and SHAYRIKA L.
CHENAULT,

          Movants,

v.

GENERAL MOTORS LLC,

          Appellee.

No. 16-CV-3764 (RA)

OPINION & ORDER

IN RE:

MOTORS LIQUIDATION CO.,

          Debtors.

RONNIE ABRAMS, United States District Judge:

Movants Marlos Chenault and Shayrika L. Chenault move for leave to appeal an order of the United States Bankruptcy Court for the Southern District of New York, which determined that General Motors Corporation's Chapter 11 petition stayed their state-court action. For the reasons set forth below, the motion is denied.

## BACKGROUND

### A. General Motors Bankruptcy Proceedings

On June 1, 2009, General Motors Corporation ("Old GM") filed a voluntary Chapter 11 petition in the Bankruptcy Court. *See* Voluntary Pet., *In re Motors Liquidation Co.*, No. 09-BK-50026 (Bankr. S.D.N.Y. June 1, 2009) (ECF No. 1). The same day, Old GM filed a motion seeking approval of a sale agreement, under which it would sell substantially all its assets to General Motors, LLC ("New GM"). *See* Mot. for Sale of Property, *In re Motors Liquidation Co.*, No. 09-

BK-50026 (Bankr. S.D.N.Y. June 1, 2009) (ECF No. 92).

On July 5, 2009, the Bankruptcy Court approved the sale agreement and authorized the sale. *See* Obj. by General Motors LLC to Mot. for Leave to Appeal ("Obj.) Ex. H (ECF No. 4-8). The sale order provides, in relevant part, that New GM "shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability . . . whether . . . now existing or hereafter arising, asserted, or unasserted." *Id.* ¶ 46. The sale order also provides that "all persons or entities are forever prohibited and enjoined from . . . commencing or continuing any action or any other proceeding pending or threatened against [Old GM] as against [New GM]." *Id.* ¶ 47. The sale order further explains that New GM would consummate the sale only if the Bankruptcy Court "expressly orders" that New GM would "not have any liability whatsoever" with respect to "rights or claims based on any successor transferee liability." *Id.* § DD.

Under the Bankruptcy Code, the filing of Old GM's Chapter 11 petition automatically stayed the commencement or continuation of all proceedings against Old GM. *See* 11 U.S.C. § 362(a)(1). That stay remained in place when the Bankruptcy Court confirmed Old GM's Chapter 11 plan on March 29, 2011. *See* Order, *In re Motors Liquidation Co.*, No. 09-BK-50026 (Bankr. S.D.N.Y. Mar. 29, 2011) (ECF No. 9941). Old GM's Chapter 11 case remains open.

## B. Movants' State Court Action

On October 18, 2012, Movants filed a complaint against "General Motors Corporation" and other entities in the state court of Fulton County, Georgia. *See* Obj. Ex. C. In their complaint, Movants allege that their 2005 GMC Envoy Denali crashed into a guardrail on an interstate highway in Morgan County, Georgia on January 29, 2011. *Id.* ¶ 9. Movants further allege that the crash was caused by a defective tire "originally designed in part" by Old GM. *Id.* ¶ 12.

2

According to the complaint, the crash left Marlos Chenault paralyzed from the waist down. *Id.* ¶ 11.

On October 22, 2012, Movants attempted to serve New GM with their complaint. *See* Obj. Ex. E. Because their complaint did not name New GM as a defendant, however, New GM's registered agent rejected service. *See id.* Movants moved for default judgment against New GM and for a correction of misnomer, claiming that New GM is "the successor-in-interest to Old GM" and that their complaint's references to Old GM were mistaken. *See* Obj. Ex. G, at 3–4. New GM opposed the motion, arguing, *inter alia*, that service was never perfected, that New GM is not the successor-in-interest to Old GM, and that Movants' claims violated the bankruptcy stay. *See* Obj. Ex. A, at 4–5.

## C. State Court Order

On September 28, 2015, the state court issued an "Order Staying Motion for Default Judgment and Directing Parties to Bankruptcy Court." Obj. Ex. B. The state court concluded that whether New GM is a successor-in-interest to Old GM, and whether Movants' claims against Old GM are barred, were "issues for the Bankruptcy Court to determine, because resolution would involve an analysis of that Court's own orders and rulings." *Id.* at 2. The state court ordered Movants "to seek a ruling from the Bankruptcy Court regarding the nature of the relationship between General Motors Corporation and General Motors, LLC, whether or not the claims herein survive or are barred for any reason, and whether or not the bankruptcy stay applies in this case." *Id.* The state court stayed its own proceedings pending a ruling from the Bankruptcy Court. *Id.*

## D. Bankruptcy Court Order

Movants then filed a motion in the Bankruptcy Court, seeking an order determining that the bankruptcy stay does not apply to their claims. Obj. Ex. A, at 2. On April 15, 2016, the

3

Bankruptcy Court denied their motion. *See id.* Drawing from its prior orders, the Bankruptcy Court first explained that "the record in this bankruptcy case and the prior decisions of this Court make it abundantly clear that New GM is *not* a successor in interest to Old GM." *Id.* at 9 (emphasis in original). The Bankruptcy Court then determined that Movants' assertion of claims in state court against Old GM violated the bankruptcy stay, which "remain[ed] in full force and effect until the closing of the chapter 11 case." *Id.* at 10. Finally, the Bankruptcy Court stated that, contrary to Movants' allegations, "New GM did *not* assume liability for [their] claims." *Id.* (emphasis in original). The Bankruptcy Court explained that, while New GM assumed liability for certain product-liability claims under the sale agreement, Movants did not assert such a claim because they did not allege that the defective tire was "manufactured, sold or delivered by" Old GM, as the sale agreement requires. *Id.* at 11.

Movants timely moved for leave to appeal the Bankruptcy Court's order, ECF No. 3, and New GM filed an objection the same day, ECF No. 4.

## LEGAL STANDARD

Under 28 U.S.C. § 158(a)(3), "a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court." *Kassover v. Kassover (In re Kassover)*, 343 F.3d 91, 94 (2d Cir. 2003).[1] "To determine whether leave to appeal should be granted, district courts apply the standards prescribed in 28 U.S.C. § 1292(b)." *Credit One Fin. v. Anderson (In re Anderson)*, 550 B.R. 228, 234 (S.D.N.Y. 2016). Under Section 1292(b), a court may certify for interlocutory appeal an order that "involves a controlling question of law as to which there is a

---

[1] Movants do not argue that the Bankruptcy Court's order is a "final order" appealable as of right under 28 U.S.C. § 158(a)(1), rather than an interlocutory order. *See* Mot. at 3–4 (ECF No. 4).

4

substantial ground for difference of opinion and that an immediate appeal from which may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

A "question of law" under Section 1292(b) refers to "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Worldcom, Inc.*, No. M-47 (HB), 2003 WL 21498904, at \*10 (S.D.N.Y. June 30, 2003) (citation omitted). "The question must also be 'controlling' in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005).

To demonstrate a "substantial ground for difference of opinion," a movant must show that "genuine doubt [exists] as to the correct applicable legal standard relied on in the order." *Picard v. Estate of Madoff*, 464 B.R. 578, 582 (S.D.N.Y. 2011) (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. at 658)). "The requirement that such a substantial ground exists may be met when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Enron Corp. v. Ave. Special Situation Fund II, L.P. (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at \*4 (S.D.N.Y. Sept. 5, 2006) (internal quotation marks omitted). "Mere conjecture that courts would disagree on the issue or that the court was incorrect in its holding is not enough; for there to be a 'substantial ground for difference of opinion' under the law . . . there must be substantial doubt that the . . . court's order was correct." *In re Anderson*, 550 B.R. at 238 (internal quotation marks omitted); *see also Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (explaining that Congress passed Section 1292(b) "to assure the prompt resolution of knotty legal problems").

"Interlocutory appeals are strongly disfavored in federal practice." *In re Ambac Fin. Grp.,*

*Inc. Secs. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010). "Movants cannot invoke the appellate process 'as a vehicle to provide early review of difficult rulings in hard cases.'" *In re Anderson*, 550 B.R. at 528 (quoting *In re Levine,* No. 94-44257, 2004 WL 764709, at \*2 (S.D.N.Y. Apr. 9, 2004)). Moreover, "Congress did not intend 28 U.S.C. § 1292(b) to serve an error-correction function." *Weber*, 484 F.3d at 159 n.3. Instead, certification is properly reserved for "exceptional circumstances," which must "overcome the general aversion to piecemeal litigation and . . . justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Enron Corp.*, No. 01-16034, 2006 WL 2548592, at \*3. In light of these considerations, "[t]he Second Circuit has 'repeatedly urged the district courts to exercise great care in making a § 1292(b) certification." *Fox v. Mandiri (In re Perry H. Koplik & Sons, Inc.)*, 377 B.R. 69, 73 (S.D.N.Y. Oct. 10, 2007) (citation omitted).

## DISCUSSION

### A. Jurisdiction

Movants first argue that there is substantial ground for difference of opinion as to whether the Bankruptcy Court had jurisdiction to rule on their motion. *See* Mot. at 4–6. The Court disagrees.

A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 157. Section 157 draws a distinction between "core" and "non-core" proceedings. 28 U.S.C. § 157(b); *see also Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002).[2]

---

[2] The core/non-core distinction was first articulated in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), which "considered the constitutionality of bankruptcy court jurisdiction under Article III of the Constitution." *In re Petrie Retail, Inc.*, 304 F.3d at 228–29. Congress subsequently codified this distinction in the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See id.* at 229.

"Core proceedings are those that are found to be 'arising under' the Bankruptcy Code or 'arising in' a bankruptcy case." *Kirschenbaum v. U.S. Dep't of Labor* (*In re Robert Plan Corp.*), 777 F.3d 594, 596 (2d Cir. 2015) (per curiam). "In core proceedings, the bankruptcy court has comprehensive power and may enter appropriate orders and judgments." *Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010) (per curiam) (alteration and internal quotation marks omitted). Under the Bankruptcy Code, "'orders approving the sale of property' constitute core proceedings." *Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V.* (*In re Millenium Seacarriers, Inc.*), 458 F.3d 92, 95 (2d Cir. 2006) (per curiam) (quoting 28 U.S.C. § 157(b)(2)(N)). Thus, as the parties do not appear to dispute, the Bankruptcy Court had jurisdiction to enter an order approving the sale of Old GM's assets to New GM. *See id.*

The Bankruptcy Court retained jurisdiction to interpret and enforce the sale order. As the Supreme Court has explained, a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders" even after it confirms a Chapter 11 plan. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Second Circuit has likewise explained that a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders" when disputes arise over the scope and effect of those orders. *In re Petrie Retail, Inc.*, 304 F.3d at 230; *accord Baker*, 613 F.3d at 352. In *In re Millenium Seacarriers, Inc.*, 419 F.3d 83 (2d Cir. 2005), for example, the Second Circuit held that a bankruptcy court had jurisdiction to interpret the scope of its prior sale order, where the parties disputed the priority of liens on assets sold pursuant to the order. *Id.* at 97. The Second Circuit further explained that the parties' "adversary proceeding was the mechanism by which the bankruptcy court enforced" the terms of the sale agreement, and "the bankruptcy court retained jurisdiction following the auction to effectuate that goal." *Id.*; *see also NWL Holdings, Inc. v. Eden Ctr., Inc.* (*In re Ames Dep't Stores, Inc.*), 317 B.R. 260, 271 (Bankr.

7

S.D.N.Y. 2004) (finding that a bankruptcy court had jurisdiction to clarify the scope of its prior sale order in a dispute "based on rights established in the sale order" (quoting *In re Petrie Retail, Inc.*, 304 F.3d at 229)).

In this case, the Bankruptcy Court was similarly within its jurisdiction to "interpret and enforce" its prior sale order by finding that the bankruptcy stay applies to Movants' state-court claims. *In re Petrie Retail, Inc.*, 304 F.3d at 230. The adversary proceeding between Movants and Old GM was "the mechanism by which the bankruptcy court enforced" the sale order. *In re Millenium Seacarriers, Inc.*, 419 F.3d at 97. To enforce the sale order, the Bankruptcy Court was required to clarify its scope. As the state court put it, determining whether New GM is a successor-in-interest to Old GM and whether the bankruptcy stay applied to Movants' claims "would involve an analysis of [the Bankruptcy] Court's own orders and rulings." Obj. Ex. B, at 2. After reviewing its prior orders, the Bankruptcy Court determined that "New GM is *not* a successor in interest to Old GM." Obj. Ex. A, at 9 (emphasis in original). The Bankruptcy Court also reviewed the sale order to explain the scope of a provision for "Assumed Liabilities," including certain "Product Liabilities" claims. *See id.* at 10. This interpretation of its own orders allowed the Bankruptcy Court to enforce the terms of the sale order, finding that Movants' action "violated the automatic stay, which continues in force, and applies to the State Court action." *Id.* at 11. Thus, there can be no serious dispute, much less a "substantial ground for difference of opinion," that the Bankruptcy Court did not exceed its jurisdiction by entering the order Movants now seek to appeal. *See In re Millenium Seacarriers, Inc.*, 419 F.3d at 97; *In re Petrie Retail, Inc.*, 304 F.3d at 230.

**B. Liability of New GM**

Movants next argue that the Court should certify the Bankruptcy Court's order for interlocutory appeal because the Bankruptcy Court erred in finding that New GM did not assume

8

liability for their claims. *See* Mot. at 6–7. This argument also fails.

As a threshold matter, this argument does not address a "controlling question of law." 28 U.S.C. § 1292(b). The issue on which Movants seek appellate review is essentially a matter of contract interpretation—the extent to which the sale order and sale agreement bar their claims. But "[w]hile the meaning of a contract generally is considered to be a question of law for the court, a question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005). Because the issue raised by Movants is not a "question of law" within the meaning of Section 1292(b), it may not serve as a basis for this Court to hear an interlocutory appeal. *See id.*; *see also, e.g.*, *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of 'controlling question of law' that normally gives rise to interlocutory certification."); *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.) ( "[T]he question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind").

Even if the question of New GM's liability were a legal one, the Court finds no "substantial ground for difference of opinion" with respect to the Bankruptcy Court's conclusions. 28 U.S.C. § 1292(b). As the Bankruptcy Court explained, the sale order clearly indicates that New GM is not the successor-in-interest to Old GM. In particular, the sale order provides that New GM "shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability . . . whether . . . now existing or hereafter arising, asserted, or unasserted." Obj. Ex. H ¶ 46. The sale order further provides that the sale was contingent upon the Bankruptcy Court's

"express order[]" that New GM would not "have any liability whatsoever" with respect to "rights or claims based on any successor transferee liability." *Id.* § DD.  In light of the clear language of the sale order, Movants' representation to the state court that New GM is "the successor-in-interest to Old GM" is plainly incorrect.  Obj. Ex. G, at 3.

Finally, the Court finds no ground to dispute the Bankruptcy Court's conclusion that Movants have not asserted a "Product Liabilities" claim as defined by the sale agreement.  The sale agreement provides that New GM assumed liability for Product Liabilities claims, defined in relevant part as:

> All Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by [Old GM] . . . which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date.

Obj. Ex. H § 2.3(a)(ix).  Here, as the Bankruptcy Court explained, Movants' complaint alleges only that Old GM "designed" a defective tire, Obj. Ex. C. ¶ 12, not that Old GM "manufactured, sold or delivered" any "component part" that caused their injuries, Obj. Ex. H § 2.3(a)(ix).  To be sure, the complaint also appears to allege that Old GM "manufactured" light passenger trucks, which may include the vehicle Movants were driving at the time of their crash.  Obj. Ex. C ¶ 12. But Movants do not claim that the vehicle caused their injuries.  Rather, Movants identify a defective tire—a "component part" of the vehicle—as the cause of their injuries.  *See id.* ¶¶ 13, 15.  Furthermore, the complaint alleges that the defective tire was "designed, manufactured . . . and distributed by the Continental Defendants" and sold by Brown Tire, not by Old GM.  *Id.* ¶¶ 13, 15.  Therefore, the Bankruptcy Court correctly determined that Movants have not asserted a "Product Liabilities" claim, as defined by the Sale Agreement, for which New GM could have

10

assumed liability.

In sum, the Bankruptcy Court's finding that New GM did not assume liability for Movants' claims does not "involve[] a controlling question of law" and thus provides no basis for the Court to hear this appeal. 28 U.S.C. § 1292(b). Even if it did, the Court finds no "substantial ground for difference of opinion" on the question of whether New GM assumed liability for Movants' claims. *Id.*

## CONCLUSION

For the foregoing reasons, the motion for leave to appeal is denied. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:  February 21, 2017
        New York, New York

                                        Ronnie Abrams
                                        United States District Judge

11